```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
LATOYA BAPTISTE,                     :
                    Plaintiff,       :     04 CIV. 5544 (DLC)
                                     :
          -v-                        :     OPINION & ORDER
                                     :
THE W HOTEL and MICHAEL MOORE and JOHN :
DOE, Manager;                        :
                    Defendants.      :
-------------------------------------X
```

For Plaintiff Latoya Baptiste:
Amelio P. Marino
163 West 71st Street
New York, New York 10023

For Defendant The W Hotel:
Peter T. Shapiro
Jones Hirsch Connors & Bull P.C.
One Battery Park Plaza
New York, New York 10004

DENISE COTE, District Judge:

Plaintiff Latoya Baptiste ("Baptiste") brings this action alleging that defendants violated her federal and state constitutional rights, and committed a host of common law torts against her, during her late-night visit to a W Hotel in Manhattan on February 20, 2002. On February 10, 2005, defendant SLC Operating Limited Partnership, which does business as the W Hotel (the "W"), moved to dismiss the plaintiff's claims against it pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the grounds that plaintiff has failed to state a claim upon which relief can be granted. For the reasons stated herein, the W's motion to dismiss Baptiste's claims under 42 U.S.C. §§ 1981 and 1983 is granted, and these claims are also dismissed as against the individual defendants. The Court declines to exercise supplemental jurisdiction over Baptiste's state law claims.

Background

The following facts are taken from the plaintiff's amended complaint. On February 20, 2002, Baptiste, who is an African-American woman, arrived at the W New York at approximately midnight to visit a friend. Upon her arrival, defendant Michael Moore ("Moore"), then an employee of the hotel, inquired whether Baptiste had a room.[1] She replied that she did not and was visiting a friend. At that point, Moore phoned Baptiste's friend's room, and Baptiste, "[h]earing nothing further," took the elevator up to her friend's room.

When Baptiste exited the elevator, Moore instructed Baptiste and her friend that they had to "sign in downstairs."[2] Together, Baptiste, Moore, and her friend took an elevator downstairs. During this elevator ride, Moore told Baptiste, "I don't know what kind of outcall service you have." Upon exiting the elevator, Moore then told Baptiste that she "should be ashamed of [her]self," prompting Baptiste to ask Moore what she did that warranted such shame. Moore responded, "You know what I'm talking about," and reiterated that Baptiste should be ashamed of herself. Moore subsequently muttered a gendered epithet at Baptiste.

---

[1] The amended complaint does not describe Moore's job within the hotel. It does, however, imply that he was a security guard in that it refers to an employee who worked with Moore as "another security guard."

[2] It is unclear how Moore, who was in the process of calling Baptiste's friend's room while Baptiste was taking the elevator to the room, then appeared on the same floor as Baptiste and her friend. The complaint does not describe whether or not Moore accompanied Baptiste on her elevator trip upstairs.

Following the above-described exchange with Moore, Baptiste complained about his actions to the hotel manager, who responded, "I guess [Moore] was doing his job." Baptiste then attempted to speak with a man identified in her complaint simply as Scott, who "had a card stating he was Director of Operations." Scott first ignored Baptiste. Subsequently, he repeatedly asked her whether she wanted to rent a room in the hotel. Ultimately, Scott expressed to Baptiste that she had to leave, walked out from behind his desk, and began to "escort" Baptiste out of the hotel. At this point, Moore, along with a hotel security guard, "proceeded to lift [Baptiste] up and toss her into the street." Moore then lifted Baptiste up from the street and "body slammed her into the ground."

Baptiste filed the instant action on July 19, 2004, in which she alleges that the defendants violated two federal laws -- 42 U.S.C. §§ 1981 and 1983 -- by subjecting her to "racist verbal abuse," falsely detaining her, and assaulting and beating her with the intent to discriminate against her on the basis of race and sex. Baptiste further alleges that the defendants' conduct subjected her to "different terms and conditions in a public accommodation on the basis of race and sex" and was the proximate cause of her "serious and permanent physical and emotional injury, pain, suffering, mental anguish, humiliation, and embarrassment" in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290. In addition, Baptiste claims that the W is liable for negligently supervising and hiring Moore, and that all of the defendants committed a variety of torts against her, including assault, battery, trespass on the person, false imprisonment,

negligence, and intentional infliction of emotional distress. Finally, Baptiste claims that all of the defendants violated rights "otherwise guaranteed" to her by the Constitution of the State of New York but does not specify which rights.

Baptiste filed her original complaint on July 16, 2004, and on November 19, the W filed a motion to dismiss. During a January 20, 2005 pre-trial conference, plaintiff represented her desire to amend her complaint. This request was granted with the understanding that plaintiff would have no opportunity to further amend the complaint. Baptiste filed an amended complaint, and the instant motion was fully submitted by March 4.[3]

After the motion was fully submitted, two problems emerged. First, as the plaintiff filed an amended complaint on February 17 and again filed an amended complaint on February 26, some confusion ensued over which filing constituted the controlling document. During a March 14 telephone conference with the Court, the parties agreed that the version plaintiff's counsel sent to defendant's counsel on March 4 would serve as the official amended complaint. This amended complaint does not make any allegations against the John Doe defendant but continues to list him in the caption. Second, although the W moved to dismiss plaintiff's claims as against the John Doe defendant and against Moore, as well as itself, the W does not represent either of these individuals. Therefore, through a April 6 Order, the parties were ordered to

---

[3] Plaintiff's submission in opposition to the motion to dismiss is wholly deficient. Labeled as an "affirmation," the plaintiff's submission does not include a brief, or any citation to case law.

4

show cause by means of a written submission why, in the event that the W's motion to dismiss is granted on the ground that a cause of action fails to state a claim, that the cause of action should not be similarly dismissed as to the Doe defendant and Moore. Plaintiff's submission, received on April 15, does not provide any basis for distinguishing between the individual defendants and the W when analyzing whether Baptiste's federal law causes of action state a claim.

## Discussion

Rule 8(a) requires that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed. R. Civ. P. Pleadings are to give "fair notice" of a claim and "the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. Dura Pharm., Inc. v. Broudo, 544 U.S. ___ , No. 03-932, slip. op. at 9 (2005) (citation omitted); see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Rule 8 is "not meant to impose a great burden upon a plaintiff." Broudo, slip op. at 10. Rather, "[t]he federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003) (citation omitted). Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required."

5

Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted).

To dismiss an action pursuant to Rule 12(b)(6), a court must determine that "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003) (citation omitted).  In construing the complaint, the court must "accept[] as true the factual allegations in the complaint as true and draw[] all inferences in the plaintiff's favor."  Id.  If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed.  Swierkiewicz, 534 U.S. at 514.

I.  Section 1981 Claim

Baptiste's first federal cause of action is premised on 42 U.S.C. § 1981 ("Section 1981").  Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory <u>to make and enforce contracts</u>, to sue, be parties, give evidence, and <u>to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens</u>.

42 U.S.C. § 1981(a) (emphasis supplied).  As the Supreme Court has explained, Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003) (citation omitted).  With respect to racial discrimination, Section 1981 "reaches private conduct," Runyon v.

McCrary, 427 U.S. 160, 173 (1976), but "can be violated only by purposeful discrimination." Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) (emphasis supplied). Section 1981 does not, however, apply to claims of gender discrimination. Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).

Although claims such as Baptiste's are typically based on the "make and enforce contracts" prong of Section 1981, see, e.g., Murrell v. The Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001) (make and enforce contracts prong applies to "innkeeper's discriminatory eviction of a guest on the basis of race"), Section 1981 also protects a person's right to "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). At least one court has found that this so-called "equal benefits clause" provides "ample room" to accommodate a plaintiff's claim that a defendant "refused them entrance to [a] [h]otel's premises on the basis of race." Franceschi v. Hyatt Corp., 782 F. Supp. 712, 724 (D.P.R. 1992).

Within the Second Circuit, a plaintiff may plead a violation of the "equal benefits clause" of Section 1981 by alleging that a defendant, "motivated by racial animosity, deprived or attempted to deprive [her] of the 'full and equal benefit' of a law or proceeding 'for the security of persons and property.'" Phillip, 316 F.3d at 292 (quoting 42 U.S.C. § 1981(a)). In Phillip, for instance, the Second Circuit found that the college student plaintiffs sufficiently pleaded a violation of Section 1981 in

7

alleging that university security officers called the police to remove the students from university property after finding them socializing in the library's lobby. Id. at 292-93, 299. In the court's view, these facts were sufficient as defendants "attempted to trigger a legal proceeding against plaintiffs but would not have taken the same action had white students engaged in the same conduct." Id. at 298.

Although the Phillip court expressly declined "to define the universe of laws and proceedings for the security of persons and property, believing this task best resolved case by case," id. at 298, it nonetheless suggested that the equal benefits clause largely concerns torts, remarking that "there is no persuasive reason why racially motivated torts that deprive a plaintiff of the equal benefit of laws or proceedings for the security of persons and property should be outside the ambit of federal authority while racially motivated breaches of contract are not." Id. at 297-98. Since Phillip, at least one court in this Circuit has found that allegations of racially-motivated, common-law torts, such as assault, battery, and false imprisonment, state a violation of laws directed at the security of persons. Pierre v. J.C. Penney Co., 340 F. Supp. 2d 308, 312-13 (E.D.N.Y. 2004).

Under Broudo, however, a plaintiff must give fair notice of what her claims are as well as the "grounds upon which [they] rest[]." Broudo, slip op. at 9 (citation omitted). The W contends that Baptiste has failed to satisfy this obligation, characterizing her account of events as "devoid of any allegation that race was the motivating factor in any of the conduct described." While a

8

complaint asserting a violation of Section 1981 need not "contain many evidentiary allegations relevant to intent," the Phillip court observed that the plaintiffs sufficiently pleaded a 1981 violation by alleging that they "were singled out of a group that apparently also contained non-minority students." Id. at 299. See also Pierre, 340 F. Supp. 2d at 309 (denying motion to dismiss where plaintiff "allege[d] that she was singled out because she was black" and "saw only non-white shoppers in detention, although she had seen many white customers shopping in the store"). The Swierkiewicz Court similarly concluded that the plaintiff's complaint, which alleged employment discrimination on the basis of national origin and age, had given the defendants "fair notice of the basis for [his] claims" at least in part because his complaint "included the ages and nationalities of at least some of the relevant persons involved with his termination." Swierkiewicz, 534 U.S. at 514.

Baptiste has not provided fair notice of the grounds on which her allegations of intentional racial discrimination rest. She has asserted in a conclusory fashion that she was subjected to "racial verbal abuse" and physical assault "motivated by racial animus" but has pointed to no facts or circumstances, other than the fact that she is African-American, that would give the W fair notice of the grounds from which one could infer that her treatment by the W's staff was motivated by racial animus. Consequently, the W's motion to dismiss Baptiste's Section 1981 claim as to all three defendants is granted.

9

B.  Section 1983

In addition to her Section 1981 claim, Baptiste has also complained that the W violated her rights under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, <u>under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia</u>, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis supplied). To state a claim for race or gender discrimination under Section 1983, as Baptiste seeks to do, a plaintiff must allege that the defendant "acted under color of state law." <u>Tancredi v. Metro. Life Ins. Co.</u>, 378 F.3d 220, 229 (2d Cir. 2004) (citation omitted). "It is settled that conduct by a private entity constitutes state action only when there is a sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself." <u>Id.</u> (citation omitted). As the W points out, however, nowhere does Baptiste's complaint allege any involvement by governmental actors. Nor has she claimed that the W is so connected to the State so as to constitute state action. As a result, the W's motion to dismiss Baptiste's Section 1983 claim is granted as to all three defendants.

C.  State-Law Claims

In addition to her federal claims, Baptiste charges that the defendants independently committed several violations of state law, ranging from intentional torts, such as assault and battery, to the denial of a public accommodation under the NYSHRL, N.Y. Exec. Law § 290.  Where a federal district court "dismisse[s] all claims over which it has original jurisdiction," that court has discretion over whether to exercise supplemental jurisdiction over the plaintiff's remaining state law causes of action.  28 U.S.C. § 1367(c)(3); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 55 (2d Cir. 2004).  After dismissing a plaintiff's federal claims, a court "must reassess its jurisdiction over the case by considering several related factors -- judicial economy, convenience, fairness, and comity."  Id. at 55 (citation omitted).  Generally speaking, however, within the Second Circuit, "if [all] federal claims are dismissed before trial, the state claims should be dismissed as well."  Id. (emphasis in original) (citation omitted).  This is especially true in the absence of special circumstances, such as dismissal of the federal claims late in the action and/or the expenditure of considerable federal time in assessing the plaintiff's case.  Id.

In the instant matter, there are no special circumstances that mitigate in favor of retaining federal jurisdiction.  Conversely, the principle of comity dictates that where a plaintiff's remaining claims solely sound in state law, a federal court should decline to exercise jurisdiction.  As a result, Baptiste's state-law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

11

## Conclusion

For the reasons stated above, the W's motion to dismiss Baptiste's claims under Sections 1981 and 1983 claim is granted, and Baptiste's claims under Sections 1981 and 1983 are dismissed as against the individual defendants as well. Baptiste's common-law claims are dismissed in their entirety pursuant to 28 U.S.C. § 1367, without prejudice to the refiling of the state law claims in state court. The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
April 27, 2005

　　　　　　　　　　　　　　　／s／ Denise Cote
　　　　　　　　　　　　　　　DENISE COTE
　　　　　　　　　　　　United States District Judge